## 52927. MERRY et al. v. THE STATE.

STOLZ, Judge.

Two of the four co-defendants appeal from their conviction of theft by taking.

1. The evidence authorized the verdict. The four co-defendants were identified by numerous witnesses as the young, black, male strangers who entered two stores in Cataula, Ga., and three in Pine Mountain, Ga., and peered through the window in a fourth store in Pine Mountain. Their pattern of behavior was for the four to enter a store, disperse throughout the store, and have three of them engage the salespersons in conversations and ask for and/or buy items which were away from the cash register, while a fourth stayed in the vicinity of, and kept an eye on, the cash register.

In the first store, when a customer suspicious of the defendants' behavior (one of them kept one hand near what appeared to be a knife handle protruding from a pocket) called out the front of the store to her husband, the defendant near the cash register struck the counter, looked into the open cash register, told the saleslady, "Lady, don't worry, we'll be back," then whistled to the other three, who were dispersed throughout the store and who all left the store on this signal. The defendants testified that they were "looking for a place to eat," yet they looked into or entered six different stores, looking for or buying such items as ear bobs, a ring, a squeegee mop, a wash pan, tape and a handerchief. One asked for nails and didn't know what kind he wanted. At a variety store, one was overheard asking another, "What in the world am I going to buy in here?" at which store a spool of thread and buttons were purchased.

In the last store, a plumbing and heating service, the

four defendants entered the store (they were the only "customers" there while they were in the store), asked for and received from the mother of the owner (who was tending the store alone) a $10 bill in exchange for a $5 bill and five $1 bills. She testified that the cash drawer was almost full of bills at that time, with one section of "big" bills and one of $1 bills. The owner testified that his bookkeeper had tabulated the amount of cash in the drawer earlier that morning as $196. The owner's mother testified that after she gave the defendants the requested change, three of them had her show them an electric iron, while the fourth hung back in the vicinity of the cash drawer. When the latter caught up with the others, all four of them ran out of the store, down the street to their car, and left town. Upon checking the cash drawer immediately thereafter, the owner's mother found it open and all but a $10 bill and two $1 bills gone. When the defendants were arrested on the road to LaGrange, Ga., they had in their possession a total of $407.56. Although the total amount of cash in denominations of $1, $5 and $10 (which the stolen money was reported to consist of) was only $127.56, police officers who chased the defendant's car testified that their car sped up when the police car came into view and that they were out of the sight of the police for over a mile (during which interval it would have been possible to have thrown some of the cash out of their car).

2. When the deputy sheriff who gave chase to the defendants' car testified to the effect that he believed that the occupants of the car had seen him, defense counsel objected to the witness' drawing a conclusion, on the ground that there was no way he would know what the defendants thought. The judge then commented, "I agree with what they thought." The defendants contend that this was an unlawful comment and opinion on the evidence.

The error, if any, was harmless, as there was ample other evidence to authorize the verdict, and other evidence substantiating the conclusion that the defendants had observed the police car and were in flight. (The deputy testified he had to drive 90-100 m.p.h. to apprehend them.)

3. The charge on flight was authorized not only by the evidence of the fact that the defendants sped up when they observed the deputy's car, requiring a high-speed chase to be apprehended, but also by evidence that they ran out of the stolen-from store and all the way to their car. Cf. *Dent v. State*, 136 Ga. App. 366 (8) (221 SE2d 228) (1975). The possibility that their running was due to the rain, as they testified, was covered by the charge to the effect that no inference hurtful to the defendants should be drawn if the jury should decide that flight or similar acts was due to reasons other than a sense of guilt.

4. The remaining enumerated errors are deemed to have been abandoned by not having been argued.

*Judgment affirmed. Bell, C. J., and Clark, J., concur.*

SUBMITTED OCTOBER 7, 1976 — DECIDED NOVEMBER 5, 1976.

*Henrietta E. Turnquest,* for appellants.

*E. Mullins Whisnant, District Attorney, Lovick Anthony, Assistant District Attorney,* for appellee.